Good morning. Illinois Appellate Court First District Court is now in session, the third division. The Honorable Justice Nathaniel House presiding, case number 17-2811, People v. Torres-Moore. Good morning. This case is proceeding by Zoom due to the COVID crisis. My name is Nathaniel House. I'm a judge on the Illinois Appellate Court and presiding over this case with me are Justices Margaret McBride and David Ellis. The parties who are going to make a presentation today, please state their names and the parties you represent, beginning with the appellant. Good morning. My name is Drew Wallenstein and I represent the appellant, Torres-Moore. Good morning. My name is Paul Keefer and I represent the people of the state of Illinois. We're going to proceed in this manner. Each side will get 10 minutes of uninterrupted presentation, beginning with the appellant. We're going to try to hold you tight to the timeline, so I'm going to be timing. After your presentation, the judges will have an opportunity to ask questions, and the appellant may reserve a couple minutes for rebuttal, at which time the judges may have additional questions for either side. Does anyone have any questions about how we're going to proceed? Okay. Well, then, Mr. Wallenstein, you may proceed when you're ready. Thank you, Your Honor. Again, good morning. My name is Drew Wallenstein. I represent the appellant, Torres-Moore. As a brief reminder, this case concerns the alleged theft of five separate properties over a two- to three-year period, all charged under a single charge. I'm going to begin the discussion of this case by talking about sufficiency of the evidence, beginning with the arguments concerning single intention in design. As I discuss that, I will also discuss the question of the absence of a jury instruction given for single intention design. I'm then going to talk about the sufficiency of the evidence with respect to the value of the properties. And then, finally, I'm going to discuss the waiver of counsel. I'm, of course, open to any questions concerning the case after my presentation. With respect to single intention design, I think it's very important to note at the outset that the state did not try to prove this element at trial. There was no argument in opening or closing that there was a single intention design. There was really no evidence specifically elicited that there was a single intention design. And what was actually demonstrated at trial was not sufficient to prove single intention design, specifically under the Supreme Court case, Peeble v. Rowell. That case concerns an employee at a video game store who, over the course of his employment, would occasionally take a video game for his specific personal enjoyment. And what the Supreme Court discussed in that case is that even though it's kind of a similar... ...using the same method, targeting the same kind of property, it's all against this one employer, that was not sufficient to establish single intention design. Because what was happening in that case was more of an impulsive action. It was an impulse that I want to take this video game at this specific time. It wasn't a single intention. And there's also a 1986 Supreme Court case, Berneiser, which talks about that single intention design is a single impulse. What happened in this case is not a single impulse. Moore was much more haphazard in his intentions. And in fact, the evidence that occurs about, which could even be said to talk about his intention, is very contradictory. For instance, there's some evidence that he intended to live at some of these properties. There's the statement that he said he wants to use homesteading. There's this threat of anti-banking sentiment, which is also contradictory because one of the properties was not owned by a bank. There was some suggestion he wanted to create a corporation. He allowed others to live at the property. He allowed that other people were subleasing to another person at the property. So in that sense, there was not a single intention. There was a threat of multiple contradictory intentions, none of which unify to a single intention. And further, there really was no evidence of single design. Just because the method maybe was similar through some of the properties, although it's not the same through all the properties, even though there's a similarity of the method, that is not a design. In fact, there could be no design because, as I mentioned before, this is over the course of multiple years. He would not even have been aware that some of these properties were foreclosed upon because they were not foreclosed upon at the time that he was doing what he was doing. So he couldn't have had a single design over all five of these properties because, again, just over the length of time and based on what's in the evidence, there's no evidence that he actually had a singular design with respect to different properties. As I also mentioned before, there was no jury instruction given on single intention design. There just wasn't any instruction to the jury. It is an essential element to the offense. It is what allows the state to aggregate all the value of all the different properties. So the fact that no instruction was given functionally meant that the jury could find him guilty of the value over a million dollars of any value aggregating the properties, even though the evidence would not have established a single intention design. The absence of a jury instruction allows that to happen and allows the jury to effectively find him guilty even if the state failed to prove single intention design. So now I'm going to turn to talk about the value of the different properties. As I mentioned before, there are five separate properties. I'm going to be referring to them by their street name. For three of the properties, the sole piece of evidence to establish value is just a historical fact given by a witness that this is what the eventual sale price was. For one of the properties, the Greenwood property, it was only the listed value of the property. And for the fifth property, Rosemont, the witness is not even clear on what the sale price was. The exact quote of the witness was it wound up selling for about 675 somewhere. So there is no evidence given during this case of a witness giving their opinion as to what was the market value of this home at this specific time. And there's no evidence given about what the value of the house was at the time that Moore did the alleged theft. The absence of any opinion or to establish what the market value of the house was means that all we're left with is just the statement that it eventually sold for this amount. And no witness actually connecting with an opinion saying, okay, well, it sold for this amount. Therefore, what Moore's theft was at that time that he was doing what he was doing is, therefore, the value of that sale price. There's no evidence that the sales were an arms-length transaction. There's no opinion given that, you know, using the different approaches that are allowed under Illinois law to value real estate. They gave no opinion at all and they said they just cited historical facts. And I think it's important to note that one of the properties, the property which is worth 675, which is the largest value of any of the single properties, doesn't even have a firm piece of evidence as to what the sale price was. It's a witness just kind of speculating that it sold for somewhere around 675. They're not actually sure. They're very ambiguous about what that price was. And as I also mentioned, one of the prices doesn't even have a sale price at all, the list price. There's no evidence at all in trial, either opinion or other basis, that the list price could substitute for market value of property. Excuse me. With that being said, you know, I'd like to turn to talk then about the waiver of counsel. I think it's important to emphasize what happened when Moore's right to counsel was waived. Admonitions were given to another person who just happened to be standing in the room, not a co-defendant. It's just another person that was charged with similar crimes, has no relation to Moore. That person is admonished and talked to. And then after that discussion is done, the court turns to Moore and just allows him to waive counsel without any discussion with him. You know, he wasn't told the nature of the charges, the sentence he faced, his right to counsel. As I said far, the other person in the room, he has no relation to Moore. So Moore is just a person standing there listening to somebody else waive his right to counsel. And then he's allowed to waive his right to counsel without any discussion, without the court making sure he understands what's going on. And, you know, there is a significant difference between Farr and Moore. I mean, you can see it just play out in the record. Farr is a much more aggressive person. He is having, you know, the court kind of cut short the discussion with Farr because Farr is essentially having an argument about these alternate legal theories. You know, Farr is very firm in what he said. Moore is not like that. Moore initially accepted counsel. Moore wanted actually to have standby counsel. Moore has counsel reappointed during sentencing. So Moore is not the kind of same person who showed some kind of, you know, unwillingness to have counsel at all and was so firm in his desire to go pro se. Thank you. He was not so firm in his desire to go pro se that, you know, he would not have accepted any argument or any discussion with the judge. In fact, during trial, Moore is receptive to speaking to the court. And, you know, I think we can all agree that his trial strategy maybe was not the correct or proper approach to a trial strategy and that he didn't know how to question witnesses properly. But he was still attempting to be respectful to the court's rulings. He was respectful to the court throughout the proceedings. That's the difference between these two things. For Moore, he wasn't spoken to at all. He was allowed to go pro se just basically based on the fact that another person standing in the room went pro se. You know, with that being said, I'm open to any questions that the court may have. Thank you. Thank you. Justice Ellis, do you have any questions? I do have a few. Thank you, Justice House. Good morning, Mr. Wallenstein. Good morning, Justice Ellis. Let's talk a little bit first about the single intention in design. You know, we have the Rowell case, which is an interesting case, but it's a case involving a stipulated testimony, right? It's pretty dry stuff. The court didn't get into whether it was a de novo review or the typical Jackson standard when you review evidence. It seems to me it should have been a de novo review because it was just written facts. But in any event, there was no evidence presented as to the mental state. I mean, this is a mental state we're talking about, right? That's what the Supreme Court said. He was acting in furtherance of a single intention in design. There was no evidence presented as to his mental state. There was also evidence that he didn't do the same things with every one of the videos, right? Some of them he just took home and played himself, and some he sold. To say nothing of the fact in a related problem in the case, it wasn't charged. Single intention in design wasn't even in the indictment. Now, I know that's a separate holding of the case, but there was sort of a theme running through this whole case. It feels to me like the theme of the missing element. It wasn't charged. It wasn't argued. It wasn't mentioned in the facts. That feels like a different case than this one, doesn't it? Well, I'm definitely not disputing any of those differences you noted, but I think there are important similarities. In the sense of how I highlighted that similar to what was happening, Roel, that he wanted some for personal use, he maybe wanted to sell some transactionally or all that. It's similar to more in that there are all these contradictory non-singular intentions that kind of come out through trial. There's not one singular intention in design that comes out through trial. It's all these kind of disparate in contention mental states. And I think the further similarity is something somewhat similar to Roel. It's not the same as not charging it, but as I said, there was no jury instruction given, and the state does not argue at any point during trial singular intention in design. It's just kind of left out in there in the apex. So one of the things that I think the state mentions is that the defendant in closing argument tried to bring all of these things together as one act of protest. Now, I think we can all agree that a closing argument is not evidence, even if the defendant is the one who's giving the closing argument. But he did invite the jury. He didn't try to single out each one and argue why that was or was not theft. He grouped them all together. He asked the jury to look at this as one gigantic protest. It's not quite what you would call invited error. It's not probably quite what you would call waiver, and the state doesn't argue either invited error or waiver, but it feels a little bit like that, doesn't it? I mean, he wanted the jury. He asked the jury to consider all of these things as one act with the same point behind them. Why is that not a problem for you? Well, I think with respect, I think him asking the jury to do that was an error because the jury has to follow the evidence. And as I pointed out, the evidence in this case did not indicate that there is this one threat of bank incentive. One of the properties was not owned by a bank. So there is not this grouping of common threat through these five properties. And the fact that they have to be all singularly designed, even if Moore at the time of trial believed, okay, I was doing this all for this one reason. With due respect to Mr. Moore, he said different things to different people throughout the course of the evidence. You know, one witness says that he told them, I'm doing this because of homesteading. Well, homesteading has nothing to do with anti-banking sentiment. You know, he allows the Thomases and other people to live in these homes. You know, that has nothing to do with anti-banking sentiment. So, you know, even if he's telling the jury in closing argument, I think that these are, you know, a unified thing. You know, he's wrong because the evidence clearly indicates that there wasn't one single intention design. And the jury needs to look to the evidence and consider the evidence as finding this. Now, the jury was not instructed at all on this element. So they weren't actually allowed to actually consider, you know, what is a single intention design. It kind of just was left there. Well, I'm not aware of a case that defines single intention in design, which is, I have to say, a bit frustrating. But they're not particularly hard words. I mean, single modifies both. So it has to be a single intention and a single design. Intention is not all that hard. And design is, frankly, not all that hard. It seems like his design was the same. I mean, to go into the recorder of deeds under the guise of, you know, adverse possession, he must have understood that back at that time, the clerk wouldn't reject anything that he put in there. Now they would have. And couldn't the jury have found that he had one intention, whatever he told the jury, whatever he may have said about homesteading, couldn't they have found, notwithstanding the absence of a jury instruction, I get that. Couldn't they have found that he was trying to take control of each of these properties? Well, I think that, you know, I definitely agree that the lack of a clear definition is problematic. And that's why I did try to turn back to Berneiser, which kind of describes it as a single impulse. I think that threat is also running through Lowell, which is that he didn't have he didn't have one single impulse over all these games. It was kind of a spur of the moment decision to take this game, take that game. And I think that's what the key similarity is to this case and why the fact that he was doing a similar modus operandi, that in my argument is that that is not sufficient to prove up single intention design. The design has to actually be over the five things that he's taken. And he didn't have a singular intention design towards these five properties. His intention design is much more kind of spur of the moment. I mean, we don't really know how he came to decide on this property and this property, but he couldn't have had a singular intention towards them because some of the properties were not even foreclosed upon at the time of the beginning of his actions. So, you know, it's not it has to be part of a set of a single impulse. In this case, it seems like it's like five different impulses that are using the same method. Couldn't the jury have thought that he was looking for vacant homes and trying to take them. I mean, you know, we're getting hung up on things like foreclosure and banks and I know that he said some of that stuff, but the jury doesn't have to go along with what the defendant says. Couldn't the jury have said this is a guy walking around looking for vacant homes and when he finds one he pulls his son. Right. But again, I would say that's very similar to Raul where he's just like, I want this game. I'm going to take it. So it's like, I think, you know, you could really merge any theft at that point under a single intention design because, you know, any person who would steal who would attempt to steal real estate. They would all be looking at a property and saying, okay, I'm going to try and take it. I think what single intention design requires a little bit more. So, you know, just as an analogy, maybe a person looks and sees that a certain segment of the city is going to be renovated soon. So they say, okay, I'm going to try to take these five properties on this one block that are all going to get some kind of development. And so they have a specific design and intention towards these five properties. They have some kind of common purpose or impulse that says that here's what I'm going to do it. In this case, it's much more haphazard. It's really much more scattershot. And while it's different, you know, maybe it'd be helpful to look a little bit towards comprehensive transaction, just in the sense of, you know, thinking about it, you know, in a little bit of different way. Like, they're not all really part of one comprehensive transaction. They're part of five separate things, which are really, yeah, he's using the same method, but method is not enough. It has to be a little bit more than method or else I think in real life, the result would have been single intention design. Because in real life, he's using the same method, targeting the same person. You know, he's doing all that. If that was enough for design and intention, I think that would have been it. All right. Thank you very much. Thank you, Justice. Justice McBride, do you have any questions? Yes. Mr. Wallenstein, you were just using this word comprehensive, and that's not in the statute, is it? No. I mean, I was just saying it might be helpful to think about comprehensive transaction, which is about whether or not separate charges can be brought together in a single track. That's obviously a different line of joke. I'm just saying it might be helpful to think about that because we unfortunately don't have, we don't have a definition of single intention design. You know, as I mentioned for a while, and even for the other case I mentioned, they don't really say, here's what single intention design is, here are the factors that, you know, this court should look at. They kind of are more like the negative. We know that these things are not single intention design, and we have to kind of infer, well, how do we decide what it is in the future? Well, going to that case, and actually the charges, there's no doubt here that there was a charge that incorporated 111-4C, correct? Are we talking about it in rural law or are we talking about it in this case? In our case. There was a charge that specifically said the single intent and design. Yeah, in fact, in the theft and the financial institutions fraud and the continuing financial crimes enterprise, they all use the language of single intention design. I think, yeah, I think they clearly. That earlier case, the NYSER, the statute that they're talking about is not the statute that's in play today, for whatever reason, or maybe it's misquoted. They were looking at where the owner, you had to have the same owner of the property. Not to jump in, but I believe that after the financial crisis, the legislature did change it to allow single intention design to be against different owners. Right, right. So before you did have to prove a common interest amongst all the properties, which is not the case. And the court, pretty much in Benningser, you know, it really went into that whole idea. Talking about Rowell, one of the problems the court also found was that there was the charging instruments used the wrong language entirely. Continuous course of conduct, that's not the language of the statute. I mean, I think the court found a lot of problems with that case. The least of which was, you know, joining these multiple felonies with a kid who just started working in a store for three months and whatever. There was some notice problems, wouldn't you say? Yeah, I agree. There are some important differences there. Okay. I'm definitely not denying that. I still think that there are important similarities. And, you know, I think as we're kind of all noting, unfortunately, we have to kind of draw from the sources we have, and there aren't a lot of deep sources. What Rowell does tell us is that, yeah, this guy who just started working at GameStop who took these games week after week for either personal enjoyment or for money, that is not a single intention design. All right. Even with all these other issues. Well, in this case, I think Justice Ellis mentioned this, that the intent question is really one for the jury to decide. And it goes to the defendant's intent, not necessarily those that were impacted. Is that right? Yeah, yeah. I think he has a single intention design. Right. And there's no question, the jury could have concluded, despite his protestations to the contrary, that he was actually just trying to take over pieces of property that were owned by other people. He was going to exercise, he wanted to have adverse possession of every single property. Isn't that what his paper filings were all about? Yeah, I mean, I think the jury could find that, but that's not single intention design, or else every theft would be single intention design, because every theft is, you know. I'm saying that he filed a petition for each property to adversely possess them. That's what the paperwork was all about. Yeah, he made these filings against the property saying, I'm starting adverse possession. And, you know, there's the evidence of whether or not he exercised control over them. Again, the method being the same. Sorry. Control again. Control again is not the language of the state. It's what was his intent and his design. Sorry, I'm just saying that, you know, the method maybe is similar across the board. But the method, the fact that he uses the same method, that's not enough, or else, you know, a person commits five burglaries, they're suddenly single intention design because they all broke into somebody's house. Well, I think we're dealing with a very discrete area of the law, and he filed papers so as to adversely possess five properties. He could say, and he did say it was in protest to banks. You say, well, one of them wasn't owned by the bank. But there is a common thread here in that these properties were owned by someone other than Mr. Moore. Were they not? Right. But, I mean, again, with all due respect, every theft is going to involve property that's owned by somebody else. So if it's all it takes is just saying you take something from somebody else or attempt to take from somebody else, then literally any theft would be joined under single intention design. Well, I don't agree because the method of his attempt to take the properties was via adverse possession and a specific statute. And he filed papers in every single one where he was trying to take over the property via a principle of law, that is, adverse possession. I mean, he did that for every property. And every single property was owned by someone else, regardless of whether the bank owned it or an individual. I don't think foreclosure matters, whether the property was in foreclosure. But couldn't the jury have concluded what his intent was? He wanted to have five properties where he's the owner, landlord, whatever you want to call him. And he was taking in money from individuals on every single property. Well, again, I think that this is where – well, I'll say two things. First, I think this is where Ra is instructed because it's a very similar thing where he is just taking these games over the course of his employment. He's using his employment to get the games. So he actually has a method. It's not a sophisticated method, but he has a specific method. He's using his employment to more or less get away with taking these games, some of them for personal enjoyment, some of them for some other purpose. And that is not the singular impulse over all these different things. There is no singular intention design over these different properties. Yes, maybe he eventually discovers one and says I want to do the same thing, but he didn't know about that property. Like the fifth property he does it, the time that he did the first property, he couldn't have had a singular intention design because he didn't even know about the existence of that fifth property. So I don't think it could be like retroactively you had a singular design and intention over all these properties when he didn't even know they existed at the time. I don't know. I think that's a question of fact. Now, as far as the value of the properties, there was never any objection to any of the testimony, is that right? Correct. There was no objection. And aren't you really attacking the foundation versus sufficiency of the evidence? Wasn't it really, isn't that a foundation problem? No, because there was no opinion given. So there's no foundation to attack. You're saying that an opinion, a specific opinion is required, that this is beyond the can of the ordinary juror when they hear from somebody that's in the real estate business about what the value of the property was. Yeah, I mean, I think, yes, because the fair cash value is defined specifically under law. It's an area that we have very specific laws to. And I think this court doesn't want to get into undermining those areas of law by saying that a jury, when it's beyond a reasonable doubt in somebody's liberty at stake, is somehow less than what is needed to prove it up in a tax assessment case or something else. Because I think that could be a very slippery road that we don't want to be going down on. Isn't it like any other error that it's not objected to? You have to show that there's a plain error here? Well, I don't think it's an evidentiary error. It's a question of sufficiency. The testimony they provided didn't meet the threshold to prove under law what the fair cash value of these homes were. And as I noted, two areas that I'll specifically say in terms of the evidence, Greenwood, there is no sale price. It's just a list of value. The guy is not even clear on what the sale price is. So I think it would be improper to say that it was proven beyond a reasonable doubt when 675 out of the, however, I can't remember the total off the top of my head, is just ambiguous. It's not even clear it sold for that amount. If you're wrong about that this is really a foundation question, is your answer still the same? I'm sorry, if I'm wrong and you believe it is a foundation question? You're saying it's sufficiency of the evidence. There are cases that would suggest that really what you're challenging is the foundation, that there wasn't an appropriate foundation for the testimony of these individuals. If it is a foundation issue, then do you have to establish plain error? Unfortunately, Your Honor, I don't have a good response to that because I haven't thought about it. Again, I don't think so because in this specific case, yes, there was no objection to the testimony, but the way it played out was just these witnesses stating historical facts. You know, it's not Moore's burden to fill in the foundation of the state's witnesses. I agree with you. There's no burden on his part, but if what you're really challenging is foundational, then there is a distinction here. It's not a sufficiency issue, but I understand your position. I think you've adequately explained that it is a sufficiency argument and that there's a whole body of law that suggests that these witnesses did not provide that evidence. I think that's really all that I have, but I have no further. Thank you. Thank you, Justice McBride. I don't have any questions. I think my colleagues have adequately covered the area. Okay, Mr. Keefer, you may proceed with 10 minutes of uninterrupted presentation. Thank you, Your Honor. May it please the Court. My name is Paul Keefer. I'm Assistant State's Attorney, Arts and the People of the State of Illinois. The people proved beyond reasonable doubt that the defendant knowingly and impertinently with sexual intention and design stole these five homes, and those homes' value exceeded $1 million. First, in regards to the sufficiency challenges regarding single intention and design, the statute, the Joyner statute, prior to January 1st, 2008, used to be conjunctive. So you used to have to prove that it was single intention and design and that it was from the same victim or multiple victims with a common interest in the property. After January 2008, it's disjunctive, and that's by Public Act 95-384. What that allows now is just to prove single intention and design, and it could be from multiple victims. This is important because this is what allows the state to charge a Ponzi scheme, for instance. So if somebody's perpetrating a Ponzi scheme in the state of Illinois, there's going to be multiple victims, and those victims have different interests in their own property that is stolen. But it will still be charged, still can be charged, as a single intention and design. And that's important because a lot of the case law presented by the defense includes Roehl, but Roehl was a 2008 case, but the facts of it took place before 2008. There are still arguments to be made, but that is a case that preceded that change. Looking at this particular case in regards to the defendant, Torres Moore, there was a single intention and design. The design is the same through all five properties. Locate properties that are vacant, bank-owned, right, don't have families in there that you have to get rid of. Go to the recorder of deeds. File adverse possession documents, what you call adverse possession documents, as a way to cloud that title. Go back to the homes. Remove everything that relates to the previous owners or realtors or anybody else who has any kind of challenge to your control over that property. Put up your own no trespassing signs on those properties. And unfortunately, since you can't live in five homes at once, either put yourself in those properties, which you was at multiple times at multiple properties, or you put tenants at those properties. So it's harder for the people who are the true owners of those properties to go in and retake control over those properties. In addition, you have these adverse possession documents to wave in front of the face of anybody who would challenge your control. And that includes neighbors, that includes law enforcement who are less sophisticated about these crimes, and that includes federal employees. All these people confronted them, and all these people had those documents waved in their faces. Looking at the single intent behind all this, what ties it all together, after the defendant was arrested and he was confronted, he admitted to Detective Purdy for being a prior member of the Moorish community. In addition, when he was confronted about these properties, he told Detective Purdy that he hated the banks and that he refused to pay mortgages and refused to pay taxes. That is what ties all of this together. That is what ties each one of these thefts together. The state gets criticized for bringing up other reasons, but for every theft, there are multiple motivations and multiple benefits. So you steal to benefit yourself, to enrich yourself. You could also steal to help out your church. There could be multiple reasons why you steal, and those are all part of it. But the single intent that ties all these together would be that sticking it to the banks while getting as many properties as you possibly can. I will jump, just as the defense did, to the omission of the jury instructions regarding this. This was not objected to during the jury instructions. It could have been objected to. It could have been fixed in that time. It was not raised post-trial. So the only way we're looking at this is whether or not it's through plain error. It is an omission. It is not a misstatement. By not having single intention design in the jury instructions, it's an omission, not a misstatement of the law. First, we look at plain error and see whether or not it's closely balanced. This was not a closely balanced case. There was all of the state's four days of evidence came in uncontradicted for the most part, not a closely balanced case. Then we look at whether or not the error was so egregious that it created the risk of an unfair trial and substantial prejudice to the defendant. The defendant, in his own closing remarks, admits to the jury that he is doing this as a rock against the Goliath bank industry, tying all these properties together. And again, there was overwhelming, uncontradicted evidence that this was through a single intention and design. And it was argued. You don't need to say, I'm going to argue single intention and design down to the jury. But during the argument, the design was laid out by both of the prosecutors. And in addition, they argued that just because you hate banks, which a lot of us do, that is an insufficient reason to do what he did. And it's still criminal. So it didn't rise to the level of prejudice to the defendant and the risk of an unfair trial. In regards to the value, defendants stole these five homes and the value exceeded $1 million. This is evidenced by professional testimony and evidenced by the photographs that were introduced during the trial. And if you look at each one of the properties, for most of them, there's multiple people that testified. And it wasn't just a random date of sales price. A lot of them explained, for instance, in the Esmond case, explained that the house was underwater, $370,000. Both Linda Dominguez and Sharon Kelly said that it sold for $164,000. In the Wood case, we have two different witnesses describing the price. In addition, there's a broker's price opinion provided by Ms. Stuvenal, who was with a real estate broker for over 25 years in the neighborhood. The Rosemount property, they did say $675,000. But if you look at page B4 in the record, they mentioned that the house was listed for $729,900 and then said it sold for around $675,000. And then Indiana, we have a sales price of $190,000. And in regards to Greenwood, that's brought up by counsel. So the defendant wasn't sophisticated enough to differentiate between an LLC and a bank. I don't think it's a strong enough reason to destroy the intent behind that. In addition, there was testimony in addition to the listing price that there was $85,000 of rehab put into that property. So there was testimony regarding some of the value. Even without Greenwood, we still have over $1 million. So let's take Greenwood out of the equation. The value of the other homes could potentially still be over $1 million. And let's not forget we have a jury here. These are people. They understand homes. So when they're shown pictures and they're shown locations of where houses are and given listing prices, giving brokerage prices opinions, given how much those houses sold for, they can make their own determinations of value. And they did that. And they found that value exceeded over $1 million. And, again, this is conservative estimates of the value. So each time in the state's brief, the over $1 million is the lowest sum provided by each one of those witnesses. In regards to the waiver of counsel, defendant knowingly and intelligently waived his right to counsel. And that's a standard we have to look at. On the first date in front of Judge Hooks, the defendant, Torres Moore, affirmatively requested the public defender. On the second date, again, the public defender was appointed for him. On the third date, he had a motion to terminate counsel where in his written motion he cites that he understands that he has a constitutional right to counsel, but he does not want one. He does ask the judge for standby counsel. And there is, I think it's incorrect to say there was no language from Judge Crane. There was. He said standby counsel cannot be appointed for you. I can appoint the public defender. Do you not want to do that? He did not want counsel. And then it's not just that date. You have almost 10 different instances all riding up to trial, two weeks before trial, between Judge Crane and Judge Maldonado where they're both telling the defendant we can get you counsel. It would be a good idea to get counsel. A public defender would be very helpful for this. We can appoint a public defender for you. It wasn't just that one day. It was multiple days where the defendant was informed over and over again that he had the right to counsel. If we're looking at it in regards to whether or not he knew about the charges, well, initially the charges were given to the public defender. He refused acceptance because he believed that would cede jurisdiction. The defendant was difficult. He appointed Judge Crane the fiduciary in the first date. He challenged the court's jurisdiction. There was a difficulty on that first date. And I think it's wrong to say that it was just another guy in the courtroom, defendant informed. They were brought up together. But in regards to the charges, he did finally accept charges once Judge Crane informed him that his challenge to the court's jurisdiction would not be forfeited. He did accept the indictment. In addition, a number of times the state provided charges in their motions. He challenged the indictment in his own motion. And then right before void year, he was read all the charges allowed by Judge Maldonado before the trial. And in regards to the sentencing, right in front of the defendant, defendant Farr was charged in the class X six to 30 years. It was told in front of him. It wasn't directed towards him. The state admits that. But then later on, there's a number of back and forth between motions about how this was nonprobational, how he couldn't go to veterans court because of the probation matter. Keep it to the record if you understood that. It's probation. I'm trying to knock this down to a probational statute. For all these reasons, the state would ask that this court affirm defendant's conviction of theft over a million dollars. I now have any questions. Thank you, Justice Ellis. Do you have any questions? I do have a few. Thank you. Good morning. Still morning by two minutes. Good morning, Mr. Keeper. I want to commend you on your background. That's the coolest background I've seen on a zoom. Took me a while to find it. Yeah. Yeah. Okay. So a couple things. The, the language and furtherance of a single intention and design. It's, it's not defined. And I think, well, one of the things we're trying to think about is, you know, how do we get our arms around this language, and how far does it go. And I think your opposing counsel makes what's essentially a floodgates argument, you know, where will it end if this is enough. So I think that's why I want to ask you, like, let me give you a hypothetical and tell me what you would think of this. If I were, if I had a particular signature way that I, I, I, I committed residential burglary. And I broke into your house that way. And I stole stuff and then I broke into Mr. Wallenstein's house and I, I hope I pronounced your name right, sir. Yeah. And so, you know, stuff from his house and then went to justice houses house and stole from him. And I was doing it all for essentially the same reason. Right. Maybe it happened on the same day. Maybe it happened on different days, but I did it the same way. My intention was to steal things so I could sell them and have money and I did it in exactly the same way. Would that, could you aggregate those under the joint your statute. I think each case that has a problem with defining single intention design because I think each case has to be looked at by itself. I would say three residential burglaries, if they're connected. Potentially we'd have to show how just to obtain money by itself is something that could be a single intent because like I said before, any kind of Ponzi scheme would be to enrich yourself so that would be the intention behind it. Now, with the design be the same. It could potentially could be depending exactly how you went about it, but the argument would be this wasn't part of it and you'd have a back and forth that would challenge that potentially, and that did not exist in this case so Residential burglaries, I think, are a little more complicated and I don't think that there's this case, this case is very specific about how he went about Taking over each one of these properties. And I think the facts of this case lend itself more to it being a single intention design than the case that you're presenting your honor, where I think there would be a major challenge to those being isolated Events, and I think it would be a harder pill to swallow for jury to believe if they were able to show how it's very different because this happened in January. And just because he breaks into homes or she breaks into homes, just because you can say that there's a broken door in each one of them. I don't know if that would Would be sufficient for a similar design because the charge itself would be the same each time because you probably need to break something in order to break into this house. But the policy scheme is, I think, a good example where it would pretty easily fall if I was It would fall under the joint or if I were conducting a scam where I was pretending to be raising hurricane relief funds for Haiti and I got money from 80 people and they varied in amounts I'd have 80 victims, but clearly I think most of us would probably agree that would be something we'd be talking about here. The difficulty is putting parameters around this because no court seems to have done it yet. I guess what you're suggesting is one way we could look at this is to say we maybe don't need to decide exactly how far it goes. We can just say that what happened here was enough. That would be your argument, I think, not your opposing counsel, obviously. Have I said that correctly. Yes, your honor. And I believe if the court came up with this is what single intention and design is it could be problematic because all cases are different. So I think that's one of the reasons why probably there's been some hesitancy. Between making it, you know, making that kind of finding and I do believe it's part of and it should be something that the trier effect resolves. Right. So if we're, if we're able to If this, if this individual, if we're able to argue that it wasn't part of single attention design, then the ultimate decider of that would be the trier effect. But that wasn't the case because it was uncontradicted evidence. So the position of that is that it's not like Fonda where there wasn't a finding on the aggravated battery, but they found the person guilty of the The resisting right so you have something right there saying there probably wasn't a battery in the first place. So that would be very prejudicial. Yeah. Do you are you aware of any legislative history when this statute was amended. Did anyone talk on the floor of the House or the Senate about this, about how we're trying to go after something in specific after the financial collapse. To be to be completely honest, your honor. I found this public act yesterday as I was reviewing it and Because I was seeing so much of I thought they were getting it wrong. I thought it was just they kept on saying, and and I was like, that's not how it works. We won't be able to charge anything If the fund of currency. So I am not aware of the specifics, but it does make sense to change that and or that the single intention design should not be defined solely on it being the same victim or multiple victims of common interest in the same property. I know that at least Let me, let me turn your attention to the 401 a admonishments. Are you aware of a case where no admonishments were given at all. And the court said that that all can be made up for by things that happened afterwards. I'm not, I'm not familiar with a case where no admonishments were given. I would disagree that if in this case zero admonishments were given. I do believe there was admonishments related to counsel. By Judge crane on that first date, but I think the court has changed from a lot of cases cited From defense to what was more of a strict way of looking at this. Did you say one, two, and three. Was there an answer to one, two, and three. And I think that's important because just because there's a yes after one, two, and three doesn't necessarily mean that the knowing intelligent, there could be a number of reasons why somebody may say yes It could be sticking their fingers in their ears. Just because the record does it. I think the important way to look at this is, was it knowing and intelligent and I think over and over and over. And this is a constitutional right but over and over and over again. Multiple judges made efforts to try to get this person, the defendant to have counsel and let him know that it was available to him. And I don't think that I think it wasn't knowing that the record supports that it wasn't knowing and intelligent way of counsel. Well, one of the things that rule 401 and embodies is the idea that the defendant has to have the charges explained to him. And then he has to be told the sentence right the maximum and the minimum So we're sort of presupposing that he needs to have that explained to him, even if he may already know it. Here, wouldn't we have to assume not only that he knew all of those things, but that he knew that Mr. Farr was facing the same charges as him with the same sentences. I mean, we have to presume both right and if he if far as getting admonished. How does Mr. Moore know that he's facing the same stuff. How can we presume that I think, I think by itself. It's difficult. And I think that just because you're in the room of somebody else being admonished or maybe in the back and hearing it over the speaker that would be insufficient, but I think we're looking at the record. As a whole, to see whether or not there was compliance, see whether or not wasn't knowing intelligent waiver. So I think we're looking at the record of the whole, you have to look at the fact that they were brought up together. They were co defendants and the state does put a footnote in his brief. Describing how that did change, but they were brought up together. This wasn't somebody in the line 10 people back These, these individuals were brought out together on their cases, the charges were brought up a defendant far became very difficult, obviously, during those admonishments, but he was charged With the same felonies. There's differences, obviously different counts and those things and and his indictment, but he was charged with the same offenses. And then if you look at that in conjunction with the number of times where they were trying to get this down from probation will statute. The defendant clearly knew that he was facing jail time. He knew the charge that he was given through the filings and through him being receiving the indictment. So he was aware of those things. And I think that's where there's not the same risk of somebody having absolutely nothing going to trial and then being like and then being surprised or being unaware that they essentially are facing jail time. All right. Thank you very much. Appreciate it. Thank you. Just as I was just in the back. You have any questions. Yes. Mr. Keeper, I had the same thoughts you did reviewing the statute. And when I was reading Raul Because I, I knew the language was not the same. I mean, I compared the statutory language that's currently in place with what was it at play in Raul and I wasn't, I wasn't aware when the change took place. I even thought that maybe there was a misquote. So 2008 the Raul decision was definitely dealing with the former statute, but I don't know that that makes much of a difference here because I don't think I don't think your opposing counsel is relying on the fact that they were different owners, but it, it does, I think, support. Mr. Wallenstein's position. I'm sorry. So, but Here the indictment did charge specifically common or I'm sorry, the single intent in design. Right. The indictment itself. Yes, it's a single intention. Yes. All right. For the multiple charges of the defendant was found guilty. Yeah. So, but now I want to veer off on the Waiver of counsel. Because I don't know that we find any case that would say that if the judge admonishes Another defendant that that's doing your job. And the job here is, is the, this is what the court is supposed to do, you know, This case of Maxie had come up in the briefs, but I don't, I don't know if you know, but in Maxie We initially we initially held that what it what happened in front of the judge was sufficient, but there was obviously other discussions later, but we made a specific finding Because in that case, the judge was the judge actually read the charge it explained the nature of the charges. There was a there was a mistake about the penalty for residential burglary because of the defendants prior criminal background. That was really probably the only misstep. At that initial meeting, but the charges were read the nature of the charges were read by the judge to the to the defendant in open court. The judge described the possible penalties, albeit with a misstep. And then there was a discussion that he had the right to an attorney. I mean, maybe I'm, you know, that. So, and in our initial in our opinion, we said that that alone was Was substantial compliance. I don't see that we have a reading of the charge here. I don't see the judges personally describing to him the nature of the charges. Is it am I missing something During the third court date for the defense terminated counsel, there was no reading of the charges, the charges that I knew about the charges through receiving the indictment and then the charges were read to him before Trial commenced. He was aware of the trials, but on that date was there reading directly to the defendant. There was not a reading directly to the defendant. But if we're looking at this 100% we're looking at this, especially like court used to look at this work. You do not do these 123 things, then it's no good. Then we're in trouble because that is not how it works. But if we're looking at it more. But sorry, I didn't interrupt you. Well, but in addition, you don't have the judge telling him that if you're found guilty of these charges, you are facing a class X felony with the potential sentence of anywhere from six to 30 years in the penitentiary. This was not a probationable offense at that time. On that date. Nope. But except for today. And that's just being what the record indicates. And so he was told that co defendant was told that right before the judge went to him and they're brought together. And then a number of times throughout the record. The defendant admitted to understanding that it was not probationable and admitted to knowing that before he went to trial and he was given. I think what's important is he was This is not in some cases, it's you have the admonishment check done on this date never talked about again go to trial. That wasn't this case. And so you have all these dates and then it leads up all the way to two weeks before trial when all that stuff happened. And the judge says, Do you want to have a public defender, I will appoint a public defender for you in order to go to trial. Before we go to trial. So, you know, and so the question is, does a waiver have to happen exactly the day. I don't think the new case law indicates that I think it's more of an entire record approach to see whether or not there was a knowing intelligent waiver. I think the case law indicates that when you start out with a blank slate. You've got a problem. And in addition to not advising him of the charges. In addition to not explaining the possible penalties. In addition to that, I guess you could say he knew he had a right to a lawyer and he said that, but we're starting out with a case where basically There's no admonishments regarding the nature of the charges regarding the possible penalties and so unlike these other cases, I don't see that this is similar to something else. In addition, is there any indication here that this particular Mr. Moore had some sort of experience as a litigant himself. That is like some other case law where they actually practice law or had a background in law, there is not. He has he has a background criminal background that is expressed in the states. In a footnote for the state. He has that background. And you can see from his filings. There is case law research. He definitely he's like You know irrelevant law. In addition to relevant law. So there is some sophistication, but to pretend that he's a lawyer or a trained lawyer, I think would be inaccurate. All right. And on the intent single intent and design. Do you agree that that there's, I mean, They are all different properties. True. They're all different properties. But the statute that we're dealing with it really doesn't have any constraints as far as ownership, but we do know one thing that none of these properties were they were owned by someone other than the defendant. That's correct. Yeah. And he did indicate That is, I mean, there is evidence that is intent was to try to take over the properties under our laws regarding adverse possession kind of an ironic case here, isn't it. All right. Well, I don't have any other questions. I do think there's a big difference in this case regarding the admissions under 401 So, It's all I Think justice. Right. I want to ask a question about the 401 admissions to You know, when you were discussing this case and the reasons why the admissions were sufficient you refer to other court dates and Something happened right before the trial. When you look at the rule, doesn't it seem like the court is anticipating that when a Defendant says I want to represent myself that those administrations are to be given at that particular time so that when he makes that decision about whether or not To represent himself. He knows what the charge is he knows how much time he's facing And he knows that if he can't afford a lawyer, one would be appointed. Shouldn't he have those facts in hand when he makes that election, whether than making an election and then having stuff drip, drip, drip down the road. In that the intention that that information be given at the time the election is made. Judge house that would be ideal. And that's what it should be 123 and a lot of times the judges will try to do that. I think the problem in this case is we do have admitted Moorish group sovereign citizen individuals who are becoming very difficult and should that play a role for a judge where they won't Won't answer a question because the issue for that first court date project crane was any kind of acceptance of counsel. Any kind of acceptance of the indictment, any kind of acceptance of discovery would be forfeiting a jurisdiction, because I am not a citizen of the state of Illinois. I am part of the People's Republic of Illinois and not part of the state of Illinois. And so when you're having that as As a judge, I think it becomes difficult to automatically just have that one date where you're able to go 123 questions. Yes, yes, yes. Have that done with check. And so we are dealing with two individuals judge had that were being extremely difficult again challenging jurisdiction. Appointing him a fiduciary on taxes that the judge rejected. So this was a defendant that was not cooperating whatsoever to have the back and forth. So I think when you're dealing with this particular situation, we have to look at the entire record because it's not as easy as it As it as it is in other cases, that does not mean that this individual because they're a sovereign citizen or more true Shouldn't still know about the charges shouldn't still be able to, but it is a constitutional right to waive your right to counsel and he very clearly said he wanted to do that. He did it in a filing and then the question is, well, do you really know about these charges. Yes, he knew about the charges he received the charges, they were read to him. He knew that before he went to trial. In addition, and he knew about the fact that what he was facing was non probationable, but if he lost. He was going to jail. He knew those things going to trial. So then are we going to go back into records where defendants are being belligerent or difficult and say that you didn't say these things on this particular day therefore new trial. In this case is that the most difficult defendant. Was addressed personally as required by the rule and did get the admonition that, you know, fires is in the farthest far decision. In this case, however, the defendant was not addressed personally with these with this information and that makes a difference. It makes a difference. There clearly is a difference between and likely why oral argument in this case versus the other case, but But in that case, there was still some challenges, potentially, with that admonition admonishment, excuse me, but there clearly are differences and First versus second is likely what happened here. And that's, that's the reason behind that they both are being difficult far was being more belligerent. Sure. But that happened right before and they're brought as co defendants and so that was faith. So our judges, as opposed to make sure that there's a yes on the record on that first date. And only that date in order for them to say that, or is it something that as judges, we have to make sure that the people are the defendants are aware Of their rights throughout to make sure it's clear because maybe that day was not the right day. So I think it is. I think we have to look at that and and ultimately it's whether it was knowing and intelligent and I the record does support that. Thank you. I don't have any other questions. The judges have any additional I want to go back to the waiver. Keeper. I don't know that. That there's really support for saying You know, we can look. I think we can look at the record, but I don't know that. This case is an example. That should be followed and that the waiver when it first becomes apparent to a trial judge. That someone is going to relinquish the significant constitutional right That that's the time and the place that we need to look at to see if the waiver was knowing voluntary and But I have a I have a concern that this is a case where we can look at these other things. The judge who's dealing with this person, you know, Every single person when they walk in. If they're going to relinquish that right that's the time and the place to effectuate The waiver. Look at the rule follow the rule and then we won't be having this discussion. And as I said earlier, I don't see this Comparable to any other case because here we have an, you know, almost an absence of the nature of the charges. Of the possible penalties and the judge speaking directly to this may be difficult person, but either way. That person is the same as anyone else when it comes to being managed by the judge. So I think there's a significant concern here with these facts. All right, Mr. Wallenstein, you may take a couple of minutes for rebuttal. Thank you. Briefly, I'm going to talk about single intention design. I think everyone, everyone here can kind of agree there is not a direct definition of single intention design. But I, I think what's important is that we're, we're all kind of getting a little hung up on method. Maybe he had similar methods and all that. And I think Justice Ellis's analogy. I'm going to answer a little bit more directly. No, that would not have been a single intention design. To commit burglaries against completely unrelated people, even if you have a signature method. That's not a single intention design. I think that that's what Roel actually stands for is that just because you're doing a similar method and all that, that doesn't create the singular impulse over the different things that you're taking. And I know that I know the law has changed, but it's irrelevant because Roel is all against one victim. So the single intention design part of that case, you know, it's the same thing we're applying now. I think we have to ask ourselves, did he have a singular intention design with all these five properties? No. He had multiple conflicting designs and intentions. With respect, I know that thefts could have multiple motives and benefits, but that's why most thefts are not single intention design. This may not be the kind of case where single intention design makes sense. This just may not be that kind of crime. It's not a Ponzi scheme. We're not talking about a Ponzi scheme. This isn't some kind of organized structured corporation or some kind of method of committing fraud. This is a very different thing. So maybe it's just the case that this is not the kind of crime, the theft that houses through adverse possession that can be a single intention design. That just may be the case. And, you know, maybe the legislature needs to change the law to make that so. Just very briefly on the jury instructions related to that, I would say it was a misstatement of law. Because the only way that the value was allowed to be aggregated was through a single intention design. So it's more than just the omission. It's a necessary element to allow them to get to the value. So the jury should not have been allowed to reach the value without single intention design. Very briefly on Weber, I just want to be very clear, as I think has been mentioned, no admonishments were given to him and there has been no change of the law which allows a defendant to not be admonished at all. Substantial compliance does not mean a court can say nothing to a defendant. Substantial compliance requires them to substantially comply. In this case, Moore did not receive admonishments. And stuff that happens later in the case does not retroactively admonish him on that issue. So are there any questions from the court? Thank you very much. I'm sorry, Justice House, I do want to ask him about the common design. All right. There's a lot of cases to talk about a common scheme or design, aren't there? Yes. So we do have some precedent on what that means. But in this case, the state had aggregated these charges under the Joinders statute to make this a Class X felony because of the value of the properties, correct? Yes. And this Joinders statute doesn't allow this for all offenses. There's only certain offenses delineated in that statute, isn't that right? Yes. And one of them is theft, the various forms. All right. Well, anyway, we're looking at this, as you have said, under the suspicions of the evidence. And you don't think the jury could have concluded that he had a design to take away property for his own selfish gain. They couldn't have ever concluded that. Is that your position? Well, no, my position is that that design is not what would meet single incentive design. Because I think that is what the law addresses, which is like, your design cannot just be, I want to take something. Which, in my opinion, that is what that design would be. It would be, okay, I think the design actually has to be about the design of the different things. So I think in a design, in this case, would be, you know, kind of use a similar Ponzi scheme example. You know, you set up maybe a false corporation that, you know, takes five different properties because you have a specific intent to use those five properties for some purpose. Like, as I mentioned before, maybe there's a development going on or something. So you exert a single design over those five properties. In this case, you know, there was no singular design with respect to these five properties. There was a similarity of method, although it's not the exact same method, because that's also important to note. And it's not the exact same kind of thing. So I think that means it's not a singular design. It's not a singular intent in design. All right. That's all I have. Could I just ask you just one question? Council, if we agreed with you on single intention in design, but we didn't agree with you on market value, what happens? What's the remedy? Is it an outright reversal or do we reduce the charges to five individual thefts? What happens? Well, I believe what happened a while is that they did reduce it to a mistake. So I believe that something similar would happen here. I guess it would depend on how much you disagree with me with respect to the value. Because I think you would essentially have to reduce the charge maybe to what you find to be the highest value. And, you know, that may significantly impact the cost of it all. And it's also important to note that if the value is over a million, it does change what the jury was requested to find. The law actually does make a finding that if the value is over a million, that is a specific fact that the jury must make a finding of in the finding of the case. So it may be associated with the absence of a jury instruction, the insufficient of the evidence. It may require a new trial or some change in the charges because it may not be so simple for this court to parse out. Yeah. Yeah. Okay. That's all I have. Thank you guys very much. Both of you. Thank you. Thank you, gentlemen. The case was well argued and well briefed. And we enjoyed the back and forth. We will take the case under advisement and we'll issue a decision in due course. Thank you very much and have a great afternoon.